UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 25-25666-CIV-MORENO**

SHAHER TAYSIR BARGHOUTHI,

      Petitioner,

vs.

FIELD OFFICE DIRECTOR,

      Respondent.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

THIS CAUSE came before the Court upon Petition for Writ of Habeas Corpus and Motion for Immediate Temporary Restraining Order requesting Petitioner's immediate release or a bond hearing before an immigration judge. The Court denies the first request of immediate release, but grants the second request and orders an individualized bond hearing before an immigration judge no later than May 20, 2026.

## FACTUAL BACKGROUND

Petitioner is a native and citizen of the Kingdom of Jordan, born in Palestine, and was admitted to the United States as a lawful permanent resident on January 28, 1978. On April 15, 1984, Petitioner's parents legally divorced in Louisiana and Petitioner's mother was granted primary custody with visitation rights granted to his father. Petitioner's father became a naturalized citizen of the United States on November 27, 1985, when Petitioner was eight years old. Petitioner's mother became a naturalized citizen of the United States when Petitioner was 45 years old.

On March 12, 1998, Petitioner was convicted of Principal to Trafficking in Cocaine. The legacy Immigration and Nationality Service issued a Notice to Appear on May 27, 1998, charging Petitioner with removability. On February 3, 2000, the immigration judge ordered Petitioner removed to Jordan and Petitioner waived appeal. He was released on an Order of Supervision on or about May 3, 2000, after the Jordanian Consulate declined to issue a travel document.

On December 7, 2006, Petitioner was convicted of trafficking in phenethylamines; possession of a firearm, ammo, electric weapon, device, or carry concealed weapon by a convicted felon; possession or use of drug paraphernalia; and possession of marijuana. Petitioner was sentenced to 36 months in prison. Upon his release from state custody, the Department of Homeland Security was unable to effectuate Petitioner's removal, and thus released him and placed him on an Order of Supervision. Petitioner attended all required check-ins between 2009 and 2025.

On May 19, 2025, Petitioner attended a check-in appointment at Immigration and Customs Enforcement ("ICE"). ICE revoked Petitioner's release and detained him. ICE Enforcement and Removal Operations scheduled Petitioner's Order of Supervision appointment and took Petitioner into custody to effectuate his removal from the United States. Since then, Petitioner has been interviewed three times by ICE Enforcement and Removal Operations—twice formally and once informally. Following the interviews, ICE recommended his continued detainment.

On October 14, 2025, ICE Enforcement and Removal Operations revoked Petitioner's Order of Supervision pursuant to 8 C.F.R. § 241.13. ICE requested a travel document from Palestine to effectuate Petitioner's removal to Israel on July 9, 2025. Its request remains pending, and Petitioner has not received an individualized bond hearing.

## PROCEDURAL HISTORY

Petitioner raises two claims in his Petition. In Count I, Petitioner argues that Respondents lack authority to detain him because he acquired citizenship through is father's naturalization. In Count II, Petitioner claims that his prolonged detention violated his due process rights. The Court held a hearing on the Petition on March 26, 2026. Following the hearing, Petitioner filed a Notice of Partial Withdrawal and withdrew Count I, stating that he "no longer seeks relief on this ground." (D.E. 12 at 1). Accordingly, the Court considers only Count II.

## LEGAL STANDARD

The Constitution provides that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfield*, 542 U.S. 507, 525 (2004). Habeas corpus serves as "a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008) (citation omitted). District courts have the authority to grant writs of habeas corpus when a petitioner demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(a); § 2241(c)(3). This jurisdiction extends to petitioners challenging detention based on the immigration laws of the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## DISCUSSION

Petitioner seeks a writ of habeas corpus for his immediate release based on the alleged violations of his Fifth Amendment constitutional right to due process, or in the alternative, an order requiring an individualized bond hearing before an immigration judge. Respondents oppose Petitioner's release on several grounds.

3

Before the Court may consider the merits of the Petition, it must first determine whether the Petition names the proper Respondents and whether the Court has authority to exercise habeas jurisdiction in this case. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 ("Federal courts are courts of limited jurisdiction.").

## A. The Proper Respondents

Respondents assert that several of the named Respondents are not proper parties to this habeas action and should be dismissed. Petitions for writ of habeas corpus shall be directed "to the person having custody of the person detained." 28 U.S.C. § 2243. "[I]n habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Indeed, "there is generally only one proper respondent to a given prisoner's habeas petition." *Id.* at 434.

Respondents contend that because Petitioner is detained at Krome, his immediate custodian is acting Assistant Field Office Director Charles Parra. Accordingly, the only proper respondent to this case is Parra in his official capacity. The Eleventh Circuit has held that courts may *sua sponte* order substitution for the proper respondent as "denial of a habeas petition for failure to name the proper respondent 'would give an unreasonably narrow reading to the habeas corpus statute.'" *Jackson v. Chatman* 589 Fed. App'x 490, n.1 (11th Cir. 2014) (quoting *West v. Louisiana* 478 F.2d 1026, 1029 (5th Cir. 1973), *aff'd in relevant part en banc*, 510 F.2d 363 (5th Cir. 1975)). The Court therefore substitutes Assistant Field Office Director Charles Parra as the sole respondent to this action. All other named respondents are dismissed.

## B. Jurisdiction Pursuant to § 1252(g)

Respondent contends that the Court lacks jurisdiction under 8 U.S.C. § 1252(g). Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf

4

of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court has explained that while section 1252(g) narrows the federal courts' jurisdiction over immigration-related claims, it does not impose "a general jurisdictional limitation," but rather covers claims arising from "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999) (quoting 8 U.S.C. § 1252(g)). "[A]lthough 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [a court's] review (at least by this provision)." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting *Reno*, 525 U.S. at 482). To determine whether § 1252(g) strips the court of jurisdiction to hear a habeas petition, the Court "must focus on the action being challenged." *Canal A Media Holdings, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The Court finds that Count II is not covered by § 1252(g)'s jurisdiction-stripping provision. In Count II, Petitioner argues that "[b]ecause his detention has lasted beyond the six-month benchmark relied upon by courts[,] it has become unconstitutionally prolonged" in violation of the Due Process Clause of the Fifth Amendment. (D.E. 1 ¶ 48–49). "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2014) (citing *Nelson v. Campbell*, 541 U.S. 637, 644 (2004); other citations omitted). Further, the Supreme Court has made clear that federal courts have jurisdiction to adjudicate "statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688. Because Petitioner brings a constitutional challenge to the duration of his post-

5

removal-period detention, the Court remains free to hear the Petitioner's claims concerning the length of his detention.

## C. The Merits of Count II: Petitioner's Constitutional Challenges to His Continued Detention

The Due Process Clause of the Fifth Amendment provides that the Government shall not "depriv[e]" any "person . . . of . . . liberty without due process of law." U.S. CONST. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Ultimately, "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Immigration and Nationality Act provides that ICE must remove an alien subject to a final order of removal within ninety days. *See* 8 U.S.C. § 1231(a)(1)(A). The statute further provides that the removal period begins on the latest date of the following:

(i)     The date the order of removal becomes administratively final.
(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*See* 28 U.S.C. § 1231(a)(1)(B). However, some aliens "may be detained beyond the removal period and, if released, shall be subject" to terms of supervision. *Id.* § 1231(a)(6). The Supreme Court has held that "once a removal is no longer reasonably foreseeable, continued detention is no longer authorized by [the] statute." *Zadvydas*, 533 U.S. at 699 (citation omitted). *Zadvydas* provides that ICE may continue to detain a noncitizen under a final order of removal for an additional three months—creating a presumptively reasonable detention period of 180 days. *Id.* at 701. After the conclusion of the 180-day removal period, an alien in ICE custody may challenge his continued

6

detention in habeas corpus proceedings on the grounds that there is no significant likelihood that his removal will occur in the future. *See id.*

### i.    *The Burden of Proof*

The parties dispute who bears the burden of demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner asserts that Respondent bears the burden under 8 C.F.R. § 241.13 because Petitioner was re-detained upon revocation of his supervised release. Respondent argues that Petitioner bears the burden of proof and states that Respondent has no affirmative burden to show that removal is imminent.

In *Akinwale v. Ashcroft*, the Eleventh Circuit explained that "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 287 F.3d 1050, 1052 (11th Cir. 2002). Petitioner notes, however, that *Akinwale* is inapposite because it was decided in the context of an alien's initial detainment. Petitioner argues that per federal regulations, the burden is on Respondent because Petitioner was previously ordered removed while detained, released on supervised release after his 90-day removal period had expired, was on supervised release between 2009–2025, and was then re-detained.

Federal regulations were revised to implement administrative review procedures for aliens detained beyond the removal period, including those who are re-detained upon revocation of their supervised release. *See Continued Detention of Aliens Subject to Final Orders of Removal*, 66 Fed. Reg. 56977 (Nov. 14, 2001) (codified at 8 C.F.R. § 241.13). "Once released on an [Order of Supervision] under § 241.13, ICE may only revoke the [Order of Supervision] for the reasons specified in § 241.13(i). Revocation under § 241.13(i) applies only to aliens released under § 241.13(g)—where ICE has formally determined that there is no significant likelihood that the alien

will be removed in the reasonably foreseeable future." *Grigorian v. Bondi*, No. 25-CV-22914-RUIZ, 2025 WL 260573, at *5 (S.D. Fla. September 9, 2025) (citing 8 C.F.R. § 241.13(i)(1)) (emphasis added). Section 241.4(b)(4) further states that if an alien is released under § 241.13, and "the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to . . . a third country, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4).

Petitioner's argument falls short, however, because the revised regulations only advise what ICE is required to determine before revoking an Order of Supervision. The regulations do not provide any instructions as to who bears the burden of proof in federal court on habeas corpus petition upon re-detainment. *See* 8 C.F.R. § 241.13(i)(2). Further, the Court is unaware of—and Petitioner does not provide—any in-circuit authority suggesting that § 241.13 shifts the burden of proof to a espondent when a habeas corpus petition involves the re-detention of a Petitioner. As a matter of text, the Court finds that the burden of proof in this case is as the Eleventh Circuit explained in *Akinwale*: the Petitioner "must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 287 F.3d at 1052. Accordingly, the Court turns to the merits of Count II.

### ii. The Length of Detention

Under *Zadvydas*, a petitioner must first show that he has been detained in excess of 180 days. 533 U.S. at 701; *see also Akinwale*, 287 F.3d at 1052. Petitioner's removal period began on May 17, 2025, and his ninety days expired on August 17, 2025. The Government does not dispute these dates, nor does it dispute that Petitioner has been detained for longer than 180 days. Accordingly, the Court finds that the first step under *Zadvydas* has been met.

### iii.   Whether Petitioner Has Shown Evidence That There is No Significant Likelihood of Removal in the Reasonably Foreseeable Future

"[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. In determining whether a petitioner has met their burden of proof, court "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive [Immigration and Naturalization Services] efforts to enforce this complex statute, and the Nation's need to speak with one voice in immigration matters." *Zadvydas*, 533 U.S. at 700. Courts further consider whether the government can present evidence that removal remains reasonably foreseeable, including the government's "contact" with a foreign country, whether the country "is accepting individuals from the United States," whether "flights are regularly being scheduled" to the country, and/or whether the country "routinely issues travel documents." *Lambert v. Garland*, 2023 WL 2016841, at *4 (S.D. Fla. Feb. 15, 2023) (Altman, J.) (quotation marks omitted); *see, e.g., Vandi v. Ripa*, 2022 WL 2709109, at *2 (S.D. Fla. June 3, 2022) (Ruiz, J.) (finding "petitioner's removal was 'reasonably foreseeable'" because Jamaica indicated that it would be issuing travel documents); *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) (noting that all receiving countries in *Zadvydas* "either refused to accept the alien or there was no repatriation treaty").

As evidence of good reason to believe that there is no significant likelihood of removal in the foreseeable future, Petitioner notes that (1) after his initial detention in 2000, the Jordanian Consulate declined to issue a travel document; (2) for approximately sixteen years thereafter, the Department of Homeland Security was unable to effectuate his removal; and (3) upon his re-detention, Respondent requested a travel document from Palestine to effectuate Petitioner's

9

removal to Israel, but Petitioner notes that "[i]t is unclear with whom in Palestine" the request was made and "why the request . . . was placed with Palestine if Petitioner is a native and citizen of Jordan" (D.E. 8 at 4).

Under the specific facts and circumstances of this case, the Court finds that Petitioner has satisfied his initial burden. The record demonstrates a prolonged and unsuccessful history of removal efforts, spanning more than a decade and a half. Such an extended inability to effectuate removal weighs heavily in favor of concluding that removal is not reasonably foreseeable at this time. The Government's current efforts do not alter this conclusion. Upon Petitioner's re-detention, the Department of Homeland Security appears to have shifted its approach by requesting travel documents from Palestinian authorities in an effort to effectuate Petitioner's removal to Israel. The record, however, is devoid of critical details regarding that request, including the specific entity contacted and the legal or factual basis for seeking travel authorization from Palestine for an individual the Government itself identifies as a native and citizen of Jordan. This lack of clarity further undermines any assertion that removal is likely in the reasonably foreseeable future.

In essence, the circumstances remain materially unchanged from those that previously rendered Petitioner's removal impracticable. The only apparent development is the Government's attempt to pursue removal through Palestinian-issued travel documents—an effort that, on this record, appears speculative at best. In light of the facts presented above by Petitioner, and considering the ongoing geopolitical conditions in the region, the Court finds that such efforts do not establish a significant likelihood of removal in the foreseeable future.

Moreover, at the March 26, 2026 hearing, the Government conceded that there are no removal flights to Israel in the foreseeable future. This concession independently confirms that Petitioner's removal is not reasonably foreseeable. Accordingly, Respondent has failed to rebut

Petitioner's showing with evidence demonstrating a significant likelihood of removal in the reasonably foreseeable future. Continued detention without an individualized bond hearing is therefore no longer authorized under 8 U.S.C. § 1231(a)(6).

## CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1. Assistant Field Office Director Charles Parra, in his individual capacity, is substituted as the sole and correct Respondent. All other Respondents are **DISMISSED.**
2. Petitioner's Verified Petition for Writ of Habeas Corpus is **GRANTED IN PART.** Respondent shall afford Petitioner an individualized bond hearing no later than **May 20, 2026**.

The Clerk is directed to close the case.

DONE AND ORDERED in Chambers at Miami, Florida, this /6 of April 2026.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record